The City of New York, Appellant, Respondent, *v.* Consolidated Telegraph and Electrical Subway Company, Respondent, Appellant.

First Department, May 27, 1921.

Municipal corporations — action to forfeit contract to construct subway for electric lines and to recover money due thereunder — contract providing that defendant might retain ten per cent of cash capital invested in construction and recoup for deficit for prior years — failure of defendant to make reports — construction paid for in stock and bonds — contract valid — plaintiff, after acquiescing, estopped from claiming forfeiture for failure to make reports — failure of defendant to make itemized report of construction does not preclude right to retain ten per cent — defendant not entitled to ten per cent prior to settlement with contractors — construction account improperly credited with sale of part of system.

In an action by the city of New York for the forfeiture of the rights of the defendant under certain contracts and for a judgment for moneys alleged to be due to the plaintiff it appeared that the defendant was to construct subways for electric lines and to lease the space therein, with the right to retain profits to the extent of ten per cent per annum " upon the actual cash capital invested by it in providing, constructing and equipping such subways," that the defendant was required to account to the plaintiff for any surplus profits over ten per cent, but was also entitled to deduct from said surplus profits for any year any deficit with respect to the ten per cent of profits which it was entitled to deduct for previous years; that said contract was authorized under chapter 499 of the Laws of 1885 and ratified by chapter 716 of the Laws of 1887; that it required the defendant to keep books of account showing in detail all receipts and expenditures and to make and return a report thereon to the comptroller of the city on the first day of October of each year; that the only reports made during the years 1887–1889 were in the form of letters stating that no revenue had been received and that the construction was not complete; that $40,000 only in cash was paid into the company for stock; that the construction of the subway was paid for by stock and bonds under a settlement with the contractors in 1890, and that the first formal report made by the defendant in compliance with the contract was made in 1892 on the demand of the comptroller.

*Held*, that the contracts, which were ratified by the Legislature and acquiesced in by the city for many years, are valid and enforcible.

The contracts, especially in view of the provisions thereof authorizing a recoupment by the defendant on account of deficits in profits, plainly entitled defendant to retain ten per cent of the actual cost to it of the construction of the subways and conduits, and it was not limited to ten per cent of the cash actually paid in for stock.

The plaintiff having acquiesced in the violations of the contracts providing for the keeping of books and the making of annual reports and having required the defendant from time to time after such violations to continue construction work, is estopped from claiming a forfeiture on account of those omissions of which its representatives made no complaint until 1892, when a formal report was demanded.

The fact that the books of the defendant do not contain an itemized statement of the cost of construction but start with the settlement in gross made with the contractors, does not preclude the defendant from retaining the ten per cent provided for in the contract.

However, since the defendant did not pay anything for construction until 1890 and then failed to enter in its books an itemized statement of the cost of construction, and also made false reports to the comptroller that it did not receive any income for the years preceding, it was not entitled to ten per cent on the cost of construction prior to 1890.

The amount received by the defendant for the sale of one system of subways, which did not become effective until December, 1890, should not have been deducted from the cost of construction chargeable to that year for the purpose of determining the amount which the defendant could retain under the ten per cent clause, since the defendant remained liable to account to the plaintiff for the profits from receipts for rentals for said system during that year.

Cross-appeals from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of August, 1916, on the report of a referee.

*Willard S. Allen* [*John F. O'Brien* of counsel, *John P. O'Brien, Corporation Counsel*], for the plaintiff.

*William N. Cohen* [*Henry J. Hemmens* and *Thomas H. Beardsley* of counsel, *Beardsley, Hemmens & Taylor*, attorneys], for the defendant.

Laughlin, J.:

This action which was commenced on the 29th of October, 1903, was brought for the forfeiture of the rights of the defendant under contracts made with it in behalf of the plaintiff and for a judgment with respect to moneys alleged to be

due and owing to the plaintiff under the contracts by which the defendant was to construct subways for electric lines and to lease the space therein and to be entitled to retain the profits on the capital invested to the extent of ten per cent per annum, and was required to account to the plaintiff for any surplus profits over such ten per cent, but was also entitled to deduct from such surplus profits for any year any deficit with respect to the ten per cent of profits which it was entitled to deduct for previous years. The parties stipulated for a reference to three designated referees and on the stipulation the issues were so referred on the 27th of June, 1906. One of the referees having died, on the 17th of December, 1912, another was appointed in his place; and on November 21, 1913, another referee was appointed in place of one who had resigned. The hearings before the referees commenced on May 23, 1907, and were concluded on the 18th of February, 1915. On the 19th of June, 1916, the referees filed their report containing findings of fact and conclusions of law and covering 121 pages of the record on appeal. The clerk of the court evidently failed or refused to enter judgment on the report and the defendant on notice moved at Special Term for an order directing the clerk to enter judgment in accordance with the report and on the 30th day of August, 1916, an order, reciting these facts and that the motion was made by the defendant and that the corporation counsel appeared but did not oppose it, was granted and entered requiring the clerk to enter judgment upon the facts found and the conclusions of law made by the referees, and the judgment in accordance therewith, but containing no reference to the order of the court and containing no recital with respect to upon whose motion it was entered, was entered by the clerk the next day adjudging and decreeing that there was no substantial failure on the part of the defendant prior to January 1, 1907, fully to carry out the provisions of the agreements upon which the action was predicated warranting the forfeiture of its rights under the agreement, and that prior to December 31, 1906, the profits and earnings of the subways constructed by the defendant pursuant to the contract were $1,336,030.66 less than the annual ten per cent on the capital invested by the defendant and to which it was entitled before it became liable

**692** CITY OF N. Y. *v.* CONSOLIDATED TEL. & EL. SUBWAY CO.

First Department, May, 1921. [Vol. 196

to account to the plaintiff for profits, and that the defendant was then and thereafter continued to be and now is entitled to recoup and retain that sum out of any sum over ten per cent of profits that may accrue after that date before the plaintiff shall become entitled to any portion of such excess profits, and that the construction account, being the cost of the subways to the defendant, as between the parties, on the 31st of December, 1906, amounted to the sum of $9,007,619.34, and that neither party was entitled to costs as against the other and that the expenses of the reference should be borne equally by the parties, and that the plaintiff was entitled to recover of the defendant the sum of $189,365.04, being the excess over ten per cent on the cost of construction earned by the defendant for the years 1888, 1889 and 1890 less the deficit under ten per cent for the year 1887, pursuant to the provisions of the contracts, and that the plaintiff have execution therefor. Although the action was commenced on the 29th of October, 1903, and no supplemental complaint was filed, the evidence taken by the referees and their findings were extended to cover defendant's liability to the plaintiff down to and including December 31, 1906; and since no objection has been taken thereto by either party both parties must be deemed to have consented to such extension of the issues.

The plaintiff contends on the appeal that the contracts should be declared null and void and all rights of the defendant thereunder should be adjudged forfeited on the ground of fraud in obtaining the contracts and on the further ground that the defendant was guilty of substantial breaches of the contracts warranting an adjudication of forfeiture under the express terms thereof, and that it should be required to pay over to the plaintiff all the rentals received by it less ten per cent on $40,000, being the cash capital received by the defendant for capital stock issued by it and that, in any event, the contracts should be construed as limiting the ten per cent which the defendant was to retain to ten per cent on its $40,000 of cash capital so derived, and that even if the contracts be so construed as to entitle the defendant to deduct ten per cent on the amount invested by it in construction and spent in the operation of the subways, still defendant is not

entitled to such deduction for the reason that it failed so to keep its accounts that the cost of construction can be ascertained therefrom. It is not claimed that the defendant is debarred from appealing by having made the motion for an order directing the clerk to enter judgment in accordance with the report of the referees. Doubtless, this was on the theory that it was the duty of the clerk to enter the judgment without any motion and we shall so assume. Defendant contends that the points made in behalf of the plaintiff on its appeal are without merit, and while asserting that the referees erred in disallowing items which it claims were properly chargeable to construction and operating accounts, in not placing the burden upon the plaintiff, in view of the lapse of time, of showing that the items charged to those accounts by the defendant were improperly so charged, in not sustaining its contention that the reports made by defendant to the plaintiff with respect to profits annually as provided in the contracts were acquiesced in by the plaintiff,— it is stated in the points that the defendant is desirous of having the litigation terminated and, therefore, does not insist upon a review of these points and is willing to abide by the determination of the referees in all respects save only in awarding judgment against it for $189,365.04. It appears that the defendant was unable to provide funds necessary for the construction of the subways pursuant to the contracts and was obliged to sublet the construction work. The first construction was performed by Mr. Crimmins, under a contract made with defendant on the 24th of August, 1886, for excavation for a subway in Sixth avenue, and the second contract was made two days later with Dorsett & Co., for furnishing and constructing the conduits and ducts in the excavation made under the Crimmins contract. With respect to both of those contracts, the work was to be paid for by the issuance to the contractors of capital stock or bonds of the defendant. On the 17th of November, 1886, the Phœnix Construction Company was incorporated and substantially the entire capital stock thereof was issued to the Metropolitan Telegraph and Telephone Company, and on the twenty-first of December defendant entered into a contract with the Phœnix Company for the construction of not exceeding 800 miles of standard two and one-half and

three-inch conduits, being part of the work which the defendant under its contracts with the municipal authorities was obligated to perform and the defendant agreed to pay therefor $2,500,000, either in cash or capital stock and bonds to be secured by a mortgage on the subways or in the alternative to reimburse the Phœnix Company for the cost of the construction plus fifteen per cent thereon, with interest at five per cent on unpaid balances. Defendant made no payment on account of the Crimmins and Dorsett contracts and those contractors were settled with by the Phœnix Company which took over the contracts. The Phœnix Company proceeded with the construction of the subways and conduits without receiving any compensation from the defendant other than the issuance by the defendant to it of 16,000 shares of the capital stock of the defendant on which the Phœnix Company paid on account $1 per share and it was evidently intended that the balance of the par value of the stock would be paid by construction work, until the month of July, 1890, when a settlement was made on the basis of the first alternative of $2,500,000, and for other construction work on the basis of the cost thereof plus fifteen per cent thereon, between defendant and the Phœnix Company, under which the Phœnix Company was given credit for the balance owing on 11,125 shares of capital stock which was one-half of the total amount of capital stock issued to the Phœnix Company, and first mortgage bonds were issued by the defendant to the Phœnix Company at ninety per cent of the par value thereof and second mortgage bonds were likewise issued at sixty per cent of the par value thereof and it returned to defendant the other half of capital stock that had been issued to it. Defendant, however, failed to keep books showing disbursements for construction account or any record with respect to disbursements for construction account with the exception that on the 31st of December, 1890, a journal entry was made debiting the construction account with $7,441,987.32, which represented the settlement with the Phœnix Company and the face value of the bonds delivered to it and $6,000.40 for salaries paid to an engineer and adjuster in the employ of the defendant. The contracts between the defendant and the board of commissioners of electrical subways created under chapter 499 of the Laws

of 1885 and ratified by chapter 716 of the Laws of 1887 required defendant to keep in regular books for that purpose, full and accurate accounts of, among other things, " the gross and net amount in detail of rental and charges of all kinds collected by [it] with the names of the persons, corporation, or association paying the same " and " all expenditures, payments and outlays of every kind " made by it in detail with the names of those to whom the same was paid, and provided that the books and accounts and all other books, papers and writings of the defendant should at all times be open to inspection by the commissioners of electrical subways and the comptroller of the city and that the defendant should on the first day of October each year make and return a statement to the comptroller, in such form and verified as he might require and prescribe, for the year ending the first day of September next preceding and should pay annually on the first day of November to the city, its net annual profits remaining after the payment of the expenses of maintaining and operating the subways in excess of ten per cent " upon the actual cash capital invested by it in providing, constructing and equipping such subways; " but the defendant was authorized to recoup any deficit in the ten per cent in any preceding period.   The only reports made by the defendant to the comptroller during the years 1887, 1888 and 1889 were in the form of letters, each of which stated that no revenue had been received by the defendant for the use of subways constructed under the agreements and that no dividend had been paid by the company and that the construction work was not complete.   The report made in 1890 was dated October first, and was also in the form of a letter and it states that the income of the company to date was much less than the expenditure and that no dividend had been declared or paid and that the construction work had not been completed.   A like report was made in 1891.   There appears to have been no other attempted compliance by the defendant with the contracts with respect to making annual reports to the comptroller until a request therefor was made by him in 1892 and then for the first time defendant made and verified a formal report.   The evidence shows the number of miles of conduits and ducts constructed each year, commencing in 1886, under the contracts by which defendant sublet the work of construction to others,

**696** CITY OF N. Y. *v.* CONSOLIDATED TEL. & EL. SUBWAY CO.

First Department, May, 1921. [Vol. 196

and tends to show the average cost per mile of such construction; but since the defendant did not expend any money on account of construction until 1890 when it made the settlement with the Phœnix Company and failed to keep books showing any cost of construction prior to that time, the referees in determining the profits of the defendant for the years prior to 1890 refused to allow anything for construction account. Defendant in its points, after expressing its willingness to abide by the determination of the referees in all respects excepting the award of the judgment against it, insists that the accounts for the years prior to 1890 should be readjusted by allowing it the estimated cost of construction by its sub-contractors during those years based on the mileage of construction shown and on the average cost of construction per mile. On that theory, there would be nothing due or owing to the plaintiff, and the amount of the construction account, which the referees found to be $9,007,619.34 as of December 31, 1906, would be increased to $9,127,550.93 and the amount of the deficit in the ten per cent profit which the defendant is entitled to recoup from excess profits over ten per cent for future years would be increased from $1,336,030, as found by the referees, to $2,127,870.91. Defendant asks that the judgment be so modified and affirmed.

The learned referees wrote an elaborate opinion in which they considered in detail all of the points made by the respective parties, with the exception of one, urged on the appeal; and it does not appear whether or not that was drawn to their attention. We agree with the decision of the referees on the points considered by them and only deem it necessary to set forth our conclusions with respect thereto.

. Manifestly, there is no merit in the plaintiff's contention that these contracts, which were ratified by the Legislature, and were acquiesced in by the city for so many years, are fraudulent and void; and moreover, no issue with respect to their validity was presented by the pleadings. The second contract provided that if at any time in the opinion of the commissioners of electrical subways there should be a substantial failure on the part of the defendant fully to carry out the provisions of the original agreement as amended and modified thereby, " and it is so adjudged by competent judicial

authority," the city might take possession of the subways subject to any valid mortgages or liens thereon outstanding, not exceeding fifty per cent, on the actual cost of the subways and all leases or contracts then existing for ·the use thereof and that the defendant should forfeit its interest therein. The contention of the city that the ten per cent which the defendant was entitled to retain from the profits for each year is limited to a percentage of the cash received by it for capital stock and invested in constructing the subways and conduits is likewise without merit. Defendant only received $40,000 in cash for stock issued by it but it ·issued capital stock and bonds for the cost of construction work. The provisions of the contract, especially in view of the provisions thereof authorizing a recoupment by the defendant on account of deficits in profits, plainly entitle defendant to retain ten per cent on the actual cost to it for the construction of the subways and conduits. Prior to the commencement of the action, the commissioner of water supply, gas and electricity, who had succeeded to the powers of the commissioners of electric subways, certified that in his opinion there had been a substantial failure by the defendant to carry out the provisions of the agreement. Defendant's alleged failure is predicated on its omission to keep books and to make annual reports to the comptroller as required by the contracts. We agree with the learned referees that the city having acquiesced in these violations of the contracts and having required the defendant from time to time after such violations to continue construction work, is estopped from claiming a forfeiture of the contracts on account of these omissions to comply therewith of which its representatives made no complaint until 1892 as already stated.

The referees reduced the defendant's construction account first so shown as of December 31, 1890, as already stated, by the difference between the par value of the bonds and the amount allowed by the Phœnix Company therefor, and by other items, thereby reducing the construction account as of that date to $4,496,659.60. There can be no doubt on the evidence but that the construction down to that time cost the defendant that amount; but the plaintiff insists that it should be wholly disallowed for the reason that the defendant failed to keep

First Department, May, 1921.                    [Vol. 196

its books and make reports as required by the contracts. It is not claimed that any competent evidence offered by the plaintiff was excluded or that there is in existence or available for the determination of the cost of construction any evidence not in the record. The city does not ask a new trial for the determination of the cost of construction but contends technically that since the books of the defendant do not contain an itemized statement of the cost of construction but start with the settlement in gross made with the Phœnix Company, no cost of construction on which the defendant is entitled to retain ten per cent has been shown. That would be quite inequitable and we agree with the decision of the referees in disallowing the city's claim. These are the only contentions made in behalf of the plaintiff and we find them all without merit.

Defendant's claim that it should be allowed to retain ten per cent on the cost of construction by its subcontractors during the years preceding 1890 is not wholly without merit; but it did not pay anything for construction until 1890 and then it failed to enter in its books an itemized statement of the cost of construction, and it also made false reports to the comptroller for in those years it permitted its contractor to receive rentals for the years 1887, 1888 and 1889, and received credit therefor in the settlement of 1890, and failed to report them to the comptroller until after said settlement. Having paid nothing during those years for the construction for which it now claims to be allowed and having failed to keep its books and to make reports as required by the contract, defendant is in no position to appeal to a court of equity to relieve it from the strict letter of the contract, which allowed a deduction of ten per cent only on cost of construction, and allowed it for the construction during those years for which it paid in 1890. The referees allowed on account of *other* items for construction account, not controverted, in 1887, $5,014; 1888, $3,011.55; and 1889, $3,162.96. The defendant's receipts for the year 1887 were less than the expenditure allowed by the referees for construction and operation; but its receipts for the year 1888 less the cost of maintainance and operations were $22,791.64. From this the referees allowed it to retain $1,303.95, being ten per cent on the cost of construction, allowed by the referees for that and the preceding year, leaving a balance of

$21,989.09 to which the referees held the plaintiff was entitled. During the year 1889 defendant's receipts over and above the cost of maintenance and operation were $79,472.21. From this amount defendant was allowed to retain $2,422.80 on account of ten per cent on the cost of construction, as allowed by the referees, leaving a balance of $78,353.36 to which it was held plaintiff was entitled.

We now come to an item on which we think the learned referees erred. The contract prescribed that the accounting year should commence on the first day of September. On the trial the parties jointly employed accountants who prepared the accounts according to the calendar years and that evidently was acquiesced in on the trial and is not questioned here. Defendant constructed and operated two systems of subways, one known as low tension subways containing telegraph, telephone and low power electric light wires, and the other known as high tension subways containing electric wires carrying high power. In the accounts as prepared by the accountants defendant has been charged with its receipts for rentals for both systems for the entire calendar year of 1890. The referees found that the construction account on which the defendant, but for its sale, to which reference will be made presently, would have been entitled to retain ten per cent from the rentals received that year, were $4,496,659.60; but they credited this construction account with $2,964,931.73 for the proceeds of the sale of the low tension system, leaving a balance of $1,531,727.87 on which, only, they allowed defendant a deduction of ten per cent. In this we are of opinion that the learned referees erred. The ten per cent deduction was allowed to the defendant under the contracts for the use of the money invested by it in the construction of the subways and conduits.

The entire amount found by the referees to have been so invested remained so invested if not throughout the year 1890, at least until the eighth of December that year. On the 3d of July, 1890, defendant agreed with the Phœnix Company to sell and convey to the nominee of the latter company its low tension subways, on condition that the nominee assume its mortgage indebtedness thereon to the extent of $2,500,000 and that the Phœnix Company cancel an indebtedness of $162,642.97 owing by defendant to it, such assumption and

cancellation of indebtedness to become effective *when* the property should be conveyed. Defendant conveyed the property to the Empire City Subway Company, Ltd., which was nominated by the Phœnix Company, by deed dated the 8th of December, 1890, which the referees found was executed on the tenth of December. In the formal account reported to the comptroller by the defendant in 1892, to which reference has been made, it credited as of December 31, 1890, to the cost of construction as the consideration received from the conveyance, $3,657,633.25. The referees found that this item exceeded the cost of construction of the subways so conveyed and reduced it to $2,964,931.73 which they found to be the true cost of construction thereof. Doubtless the referees were led into what we deem to be an error by this act on the part of the defendant in erroneously crediting the proceeds of the sale of the low tension subways to the construction account. So far as here appears, the defendant remained liable to account to the city for the profits from receipts for rentals for both systems for the entire year 1890. It was deemed necessary to procure an enabling act from the Legislature with respect to this transfer and the effect thereof on the contracts; and, accordingly, chapter 231 of the Laws of 1891 was enacted authorizing a new contract with the purchaser and the modification of the contract with the defendant and on the fifteenth of May that year the city authorities approved the transfer and authorized the making and modification of the contracts. On the theory, which both parties assume to have been correct, that the defendant was required to account to the city with respect to the receipts for rentals for the entire year 1890, it is perfectly plain, I think, that it is entitled to have the entire cost of construction deemed invested in the construction work throughout that year and to retain from receipts ten per cent thereon. On that theory, there would be a deficit for that year, under the ten per cent which the defendant would be entitled to deduct, of $207,470.58, and, therefore, the decision of the referees that the city was entitled to $89,022.59 as excess profits over ten per cent for that year was erroneous. It follows that on the defendant's appeal the judgment against it should be modified by reducing it to $100,342.45, and the deficit found by the referees as of December 31, 1906, should be increased

by the sum of $207,470.58, making it $1,543,501.24, and as so modified the judgment should be affirmed, with costs to defendant.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment modified as indicated in opinion, and as so modified affirmed, with costs to defendant.    Settle order on notice.